IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLANKIE TAILS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ALLSTAR MARKETING GROUP, LLC, <br><br> Defendant. | Case No. _____ ( ) <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

AND NOW COMES Plaintiff Blankie Tails, Inc. ("Blankie Tails" or "Plaintiff"), by and through its attorney, Emily A. Danchuk Esq., LLC, and for its Complaint against AllStar Marketing Group, LLC ("AllStar" or "Defendant"), and alleges as follows:

## PARTIES

1. Blankie Tails, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, having its principal place of business located at 361 Green Lane, Bristol, Pennsylvania.

2. Upon information and belief, AllStar Marketing Group, LLC is a New York limited liability company with a principal place of business located at 2 Skyline Drive, Hawthorne, New York.

## NATURE OF ACTION AND CLAIMS

3. This Complaint is based on trademark infringement, federal unfair competition, false advertising, copyright infringement and common law unfair competition. It arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, the U.S. Copyright Act of 1976, 17 U.S.C. 101 *et seq.* and the common laws of the State of New York.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 15 U.S.C. § 1121, 28 U.S.C. § 1331 and 1338(a) and under its supplemental jurisdiction.

5. Venue is proper in this District under 28 U.S.C. § 1391 and 1400(a) because Defendant may be found in this Judicial District, Defendant has committed acts of infringement in this Judicial District and because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

6. Blankie Tails, Inc. is the creator of "Blankie Tails," innovative sleeping bag-styled blankets which resemble mermaids and sharks ("Blankie Tails Blankets")

7. Blankie Tails first introduced its original line of mermaid and shark blankets in June of 2015 under the trademark BLANKIE TAILS ("the BLANKIE TAILS Mark").

8. The introduction of the Blankie Tails Blankets was met with instantaneous success and popularity.

9. In less than one year from the sale of the first Blankie Tails Blanket, Blankie Tails became a multi-million dollar venture.

10. In the period from June 2015 to June 2016, Blankie Tails realized approximately $9 million in revenues from sales of the Blankie Tails Blanket.

11. Blankie Tails Blankets have been featured on Glamour.com, Babble.com, BuzzFeed.com, Cosmopolitan.co.uk, on television shows including the Today Show, Good Morning Texas and Fox & Friends, and has been touted as the "most desired gift item of 2015" by CoolMomPicks.com.

12. Blankie Tails Blankets are currently sold in over 1,000 retail stores across the United States and internationally, including numerous Hallmark® stores, Dylan's Candy Bar, Gepetto's Toys and Learning Express.

13. Blankie Tails has expended approximately $750,000 in marketing and advertising for the Blankie Tails Blankets over the past year, and has attended nationally-recognized tradeshows such as AmericasMart, The New York Toy Fair, Las Vegas Licensing Expo and Learning Express Toy Expo.

14. Blankie Tails has expended significant time, money and resources in sourcing high quality materials for its Blankie Tails Blankets.

15. Blankie Tails has expended significant time, money and resources in ensuring that its product price point (of approximately $34.95 to $42.95) and product placement in carefully chosen upscale retail stores, such placement reflecting the intended brand direction of Blankie Tails.

16. Blankie Tails has expended significant time, money and resources in building the Blankie Tails brand and goodwill.

### The Blankie Tails Trademarks

17. Blankie Tails is the owner of U.S. Trademark Registration No. 4,954,865 for the mark BLANKIE TAILS for the goods of, "Nap sacks; Sleeping bags, in International Class 20," and "Bed blankets; Blankets for outdoor use; Children's blankets; Travelling blankets, in International Class 24." ("the BLANKIE TAILS Trademark Registration").

18. The BLANKIE TAILS Trademark Registration was assigned to Blankie Tails, Inc. by 3.Purpose, Inc. The BLANKIE TAILS Trademark Registration issued on May 10, 2016. Copies of the BLANKIE TAILS Trademark Registration and related assignment of trademark rights are attached as **Exhibit A**.

19. Blankie Tails is the owner of U.S. Trademark Application Serial No. 86/923,118 for the mark BLANKIE TAILS and Design *Blankie Tails* for the goods of, "Nap sacks; Sleeping bags, in International Class 20," and "Bed blankets; Blankets for outdoor use; Children's blankets; Travelling blankets, in International Class 24." ("the BLANKIE TAILS Pending Application").

20. The BLANKIE TAILS Pending Application was filed on February 29, 2016. A copy of the TESS Record from the United States Patent and Trademark Office ("USPTO") for the BLANKIE TAILS Pending Application is attached as **Exhibit B**.

### The Blankie Tails Copyright

21. Blankie Tails is the owner of U.S. Copyright Registration No. VA 1-975-705 for the work entitled, "3.Purpose Pink Shark Blankie Tail Design/3.Purpose Gray Shark Blankie Tail Design," ("Copyright Registration") via an assignment of rights from 3.Purpose, Inc. A copy of the Copyright Registration and the related assignment of copyright are attached as **Exhibit C**.

22. An image of the Blankie Tails shark blanket protected under the Copyright Registration is set forth below:



**AllStar's Unlawful Activities**

23. Upon information and belief, Defendant AllStar is a company involved in the mass production and distribution of novelty giftware items and promotional products.

24. Upon information and belief, Defendant AllStar became aware of the commercial success of the Blankie Tails Blankets in early 2016.

25. Upon information and belief, Defendant AllStar made a deliberate and intentional decision to create a confusingly similar product line of children's' blankets.

26. Upon information and belief, Defendant AllStar made a deliberate and intentional decision to reap profits from trading off of the goodwill of Blankie Tails.

27. Upon information and belief, Defendant AllStar began selling its shark tail blankets and mermaid tail blankets ("Snuggie Tails Product") under the mark SNUGGIE TAILS in June 2016 ("the SNUGGIE TAILS Mark").

28. Upon information and belief, Defendant AllStar purchased Google® ad words for the word "Blankie Tails" to place its website, www.snuggietails.com, ahead of the Blankie Tails website, www.blankietails.com, to further ensure confusion in the marketplace between the genuine Blankie Tails Blankets and the Snuggie Tails Product.

29. Upon information and belief, Defendant AllStar chose a design for its Snuggie Tails shark tail blanket that is strikingly similar to the Blankie Tails shark tail blanket. An exemplar of Defendant AllStar's shark tail blanket is set forth below:



30. Upon information and belief, Defendant AllStar intends to sell its Snuggie Tails Products via mass retailers, such as Walmart and via "As Seen On TV" advertisements.

31. Upon information and belief, the Snuggie Tails Products' materials are inferior to those of the Blankie Tails products.

32. Upon information and belief, the Snuggie Tails Products are sold at a low price point of $19.95.

33. Upon information and belief, Defendant AllStar filed U.S. Trademark Application Serial No. 87/017,982 for the mark SNUGGIE TAILS for "Children's blankets, in International Class 24."

("the SNUGGIE TAILS Application") A copy of the TESS Record from the United States Patent and Trademark Office ("USPTO") is attached as **Exhibit D**.

34. Blankie Tails, through its counsel, filed a Letter of Protest with the United States Patent and Trademark Office on June 20, 2016 arguing against registration of the SNUGGIE TAILS Application as likely to be confused with the BLANKIE TAILS Mark ("Letter of Protest").

35. On July 25, 2016, the Office of the Deputy Commissioner for Trademark Examining Policy issued a Letter of Protest Memorandum ("Memorandum") whereby it accepted the Letter of Protest filed by Blankie Tails on the ground that, "the evidence submitted by the protester is relevant and may support a reasonable ground for refusal appropriate in ex parte examination." Copies of the Letter of Protest and the Memorandum are attached as **Exhibit E**.

36. The Letter of Protest Memorandum directed the Examining Attorney for the SNUGGIE TAILS Application to consider the Letter of Protest and to determine whether there was a possible basis for refusing registration of the SNUGGIE TAILS Application on the ground that there was a "[p]ossible likelihood of confusion under Section 2(d) with…[the BLANKIE TAILS Registration]."

37. Upon information and belief, Defendant AllStar intentionally chose a mark that is confusingly similar to, and/or likely to be confused with, the BLANKIE TAILS Mark.

38. Upon information and belief, the goods sold by Defendant AllStar under the SNUGGIE TAIL Mark are the same goods sold by Blankie Tails under the BLANKIE TAILS Mark.

39. Upon information and belief, the channels of trade for the goods under the BLANKIE TAILS Mark and the channels of trade for the goods under the SNUGGIE TAIL Mark are identical.

40. Upon information and belief, the consumers of both the goods under the BLANKIE TAIL Mark and the SNUGGIE TAILS Mark are identical.

41. Upon information and belief, Defendant AllStar's use of the SNUGGIE TAILS Mark in connection with children's blankets is likely to cause confusion and to mislead customers and potential customers of Blankie Tails into believing that there is an association between AllStar and Blankie Tails.

42. Upon information and belief, Defendant AllStar intentionally copied the design of the Blankie Tails shark tail blanket.

43. Upon information and belief, the Snuggie Tails shark tail blanket is strikingly similar to the Blankie Tails shark blanket.

44. Upon information and belief, Defendant AllStar has filed approximately 500 trademark applications with the USPTO over the past 18 years.

45. Upon information and belief, Defendant AllStar has been involved in approximately eleven federal trademark infringement cases, either as the Plaintiff or the Defendant in such cases.

46. Upon information and belief, Defendant AllStar is very knowledgeable about intellectual property law, specifically U.S. Trademark Law.

47. Upon information and belief, Defendant AllStar understands the difference between using the ™ symbol and the ® symbol in a trademark capacity.

48. Upon information and belief, Defendant AllStar's SNUGGIE TAILS Application is still a pending application with the USPTO.

49. Upon information and belief, Defendant AllStar does not own, and never has owned a federal Registration for SNUGGIE TAILS for "children's blankets."

50. Upon information and belief, Defendant AllStar has falsely, intentionally and deceptively indicated on its website, www.snuggietails.com, that the SNUGGIE TAILS Mark is registered with the USPTO by utilizing the ® symbol next to the SNUGGIE TAILS Mark.

51. Upon information and belief, Defendant AllStar has falsely used the ® symbol in connection with its SNUGGIE TAILS Mark, such act constituting false advertising under the Lanham Act.

## COUNT ONE
## (Federal Trademark Infringement Under 15 U.S.C. § 1125(a)

52. Plaintiff repeats, realleges and incorporates the allegations set forth in paragraphs 1-51 above, as though fully set forth herein.

53. Defendant's distribution, marketing, promotion, offering for sale and sale of the goods that bear the SNUGGIE TAILS Mark is likely to cause confusion, mistake, or deception as to the source, affiliation, sponsorship or authenticity of Defendant's goods.

54. As a result of Defendant's unauthorized use of a trademark that is confusingly similar to the BLANKIE TAILS Mark, the public is likely to believe that Defendant's goods have been manufactured, approved by, or are affiliated with, Blankie Tails, Inc.  Consequently, Blankie Tails' ability to gain revenue through the sale of merchandise bearing the BLANKIE TAILS Mark is limited.

55. Defendant's infringement of the BLANKIE TAILS Mark is willful, intended to deceive, and intended to reap the benefit of the goodwill of Blankie Tails, Inc. and constitutes a violation of the Lanham Act, 15 U.S.C. § 1125(a).

56. As a result of Defendant's infringement, Blankie Tails has suffered, and will continue to suffer, substantial damages.  Accordingly, and pursuant to 15 U.S.C. § 1117(a), Blankie Tails is entitled to recover damages, which include any and all profits Defendant has made as a result of its wrongful conduct.

57. Additionally, Because Defendant's infringement of the BLANKIE TAILS Mark was willful and intentional within the meaning of the Lanham Act, the award of actual damages and profits should be trebled pursuant to 15 U.S.C. § 1117(b).

58. Blankie Tails, Inc. is also entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a). Blankie Tails has no adequate remedy at law for Defendant's wrongful conduct because: (a) the BLANKIE TAILS Mark is unique and valuable property which has no readily determinable market value, (b) Defendant's infringement constitutes harm to Blankie Tails such that Blankie Tails could not be made whole by any monetary award, (c) if Defendant's wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, and/or deceived as to the source, origin, or authenticity of the infringing materials, and (d) Defendant's wrongful conduct and resulting damage to Blankie Tails is continuing.

59. Blankie Tails is also entitled to recover its attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

## COUNT TWO
### (Unfair Competition Under the Lanham Act)

60. Plaintiff repeats, realleges and incorporates the allegations set forth in paragraphs 1-59 above, as though fully set forth herein.

61. Defendant has attempted to misappropriate Blankie Tails' innovations and has sold inferior, cheaper products under a trademark that is intentionally confusingly similar to the BLANKIE TAILS Mark.

62. Defendant's actions were deliberately done with the intention of confusing the consuming public into associating and/or confusing Defendant's goods with those of Blankie Tails.

63. Defendant's acts constitute unfair competition and misappropriation under the Lanham Act, 15 U.S.C. § 1125(a), which have caused and continue to cause serious injury to Blankie Tails.

64. Accordingly, Plaintiff is entitled to damages against Defendant pursuant to 15 U.S.C. § 1117(a), including without limitation Defendant's profits from sales of the Snuggie Tails Product, any damages sustained by Plaintiff, treble damages, and Plaintiff's costs and attorney's fees in connection with this action.

65. Plaintiff is also entitled to injunctive relief under 15 U.S.C. § 1116 to prevent Defendant's further violation of 15 U.S.C. § 1125(a).

## COUNT THREE
### (False Advertising Under the Lanham Act)

66. Plaintiff repeats, realleges and incorporates the allegations set forth in paragraphs 1-65 above, as though fully set forth herein.

67. Defendant has falsely advertised and represented to the consuming public that it has a federally registered trademark in and to the SNUGGIE TAILS Mark in an attempt to deceive the purchasing public and/or others into falsely believing (a) that Defendant owns a Registration for SNUGGIE TAILS and (b) that Defendant's rights in and to the SNUGGIE TAIL Mark are superior to those of Plaintiff in and to the BLANKIE TAILS Mark.

68. Defendant's false statements constitute false and misleading representations regarding the nature, characteristics or quality of Defendant's products.

69. Defendant's false statements have been and continue to be used in commerce.

70. Defendant's false statements have been and continue to be made in the context of commercial advertising or promotion.

71. Defendant's acts therefore constitute false advertising, a violation of 15 U.S.C. § 1125(a).

72. Plaintiff has no adequate remedy at law and is suffering irreparable harm and damage as a result of the acts of Defendant complained of herein in an amount thus far not determined, and to be determined at trial.

## COUNT FOUR
### (Common Law Unfair Competition)

73. Plaintiff repeats, realleges and incorporates the allegations set forth in paragraphs 1-72 above, as though fully set forth herein.

74. Defendant's acts of intentionally offering the Snuggie Tails Products which bear a striking resemblance to the Blankie Tails Blankets, has resulted, and will continue to result, in deceiving the public into believing that the Snuggie Tails Products are the same as, or associated with, the Blankie Tails Blankets.

75. Defendant's actions have caused, or will cause, confusion in the marketplace.

76. Defendant has acted unfairly in intentionally misappropriating the innovations and goodwill established by Blankie Tails in and to the Blankie Tails Blankets and the Blankie Tails brand.

77. Defendant's act of purchasing Google® ad words for the words "Blankie Tails" demonstrate willful bad faith on the part of Defendant in its misappropriation acts.

78. Defendant's acts of which Plaintiff complains herein constitute unfair competition, in the State of New York.

79. Plaintiff has been injured by reason of Defendant's deceptive acts or practices.

80. Defendant's aforesaid violations of NY GBL 349(a) have caused Plaintiff to sustain monetary damage, loss and injury to Plaintiff, in an amount to be determined at trial.

81. On information and belief, Defendant has engaged in this activity knowingly and willfully, justifying assessment of punitive damages in an amount to be determined at trial.

82. Defendant's aforesaid violations of NY GBL 349, unless enjoined by this Court, will continue to cause Plaintiff to sustain irreparable damage, loss and injury, for which Plaintiff has no adequate remedy at law.

## COUNT FIVE
## (Copyright Infringement Under 17 U.S.C. 101 et. seq.)

83. Plaintiff repeats, realleges and incorporates the allegations set forth in paragraphs 1-82 above, as though fully set forth herein.

84. Upon information and belief, Defendant's copying of Blankie Tails' shark tail blanket to create the Snuggie Tails shark tail blanket ("Infringing Product") was intentional, done with full knowledge of Plaintiff's rights, and in an effort to impermissibly copy Plaintiff's designs.

85. Defendant's marketing, promotion and sale of the Infringing Product was done without Plaintiff's authorization or consent.

86. Defendant's marketing, promotion and sale of the Infringing Product unfairly capitalizes on Plaintiff's invaluable goodwill.

87. Defendant's actions have damaged and are likely to continue to damage the reputation and substantial goodwill of Blankie Tails.

88. Upon information and belief, by its willful and misleading conduct, Defendant has made and will continue to make substantial profits and gains to which it is not, in law or in equity, entitled.

89. As a direct and proximate result of Defendant's acts of copyright infringement, Plaintiff has and continues to be irreparably injured and monetarily damaged by Defendant's acts. Plaintiff has no adequate remedy at law.

90. Plaintiff Blankie Tails has incurred and will continue to incur attorneys' fees, costs and expenses in the prosecution of this action for copyright infringement.

91. As a result of Defendant's willful and wrongful conduct, Plaintiff is entitled to recover damages which include any and all profits that Defendant has made as a result of its wrongful conduct, and Plaintiff's losses due to Defendant's misconduct, pursuant to 17 U.S.C. § 504(a)(1). In the alternative, Plaintiff is entitled to a reward of statutory damages pursuant to 17 U.S.C. § 504(c)(2).

92. The circumstances of this dispute warrant Plaintiff's recovery of attorneys' fees and full costs in prosecuting this action, pursuant to 17 U.S.C. § 505.

## PRAYER FOR RELIEF

**WHEREFORE**. Plaintiff demands:

1. That an injunction be issued enjoining Defendant and Defendant's officers, agents, servants, employees and attorneys and those persons in active concert or participation with them:

    A.  From using the BLANKIE TAILS Mark or any trademark confusingly similar thereto including without limitation the SNUGGIE TAILS Mark;

    B.  From using any trademark which may be calculated to falsely represent or which has the effect of falsely representing that the products of Defendant are sponsored by, authorized by, or associated with, Plaintiff;

    C.  From infringing the BLANKIE TAILS Mark;

    D.  From falsely representing itself as being connected with Plaintiff, or sponsored by or approved by or associated with Plaintiff or engaging in any act which is likely to falsely cause the trade, retailers and/or members of the purchasing public to believe that Defendant is, in any way, associated with Plaintiff;

    E.  From making false statements regarding the registration of the SNUGGIE TAILS Mark, or any other statements, written or oral, which falsely indicate that the SNUGGIE TAILS Mark is registered;

    F. From otherwise unfairly competing with Plaintiff;

    G.  From infringing the Blankie Tails shark blanket;

      H.  From importing, manufacturing, distributing, offering for sale, selling or otherwise trafficking in any product that infringes Plaintiff's copyright in and to the Blankie Tails shark blanket;

2.  That Defendant be required to pay to Plaintiff such actual damages as Plaintiff has sustained in consequence of the acts of Defendant complained of herein, and that any such monetary award be enhanced up to three times pursuant to the provisions of 15 U.S.C. § 1117;

3.  That Defendant be required to pay to Plaintiff such actual damages as Plaintiff has sustained in consequence of the acts of Defendant complained of herein, and that any such monetary award be enhanced up to three times pursuant to the provisions of 15 U.S.C. § 1117;

4.  That Defendant be required to account to Plaintiff for all profits resulting from Defendant's trademark infringement activities and false advertising and that such award of profits to Plaintiff be increased by the Court as provided for under 15 U.S.C. § 1117;

5.  That Defendant be required to account to Plaintiff for all profits resulting from Defendant's copyright infringement activities and that such award of profits be increased by the Court for willful infringement, as provided for under 17 U.S.C. § 504;

6.  That Plaintiff alternatively be awarded up to $150,000 in statutory damages pursuant to an election thereof by Plaintiff, under 17 U.S.C. § 504(c).

7.  That Plaintiff be awarded its attorneys' fees as available under the Copyright Act, 17 U.S.C. § 101 *et seq*. and/or under the Lanham Act, 17 U.S.C. § 1117;

8.  That Defendant be required to Pay to Plaintiff punitive damages in connection with Plaintiff's unfair competition claim;

9.  That Plaintiff be awarded pre-judgment interest as allowed by law;

10.  That Plaintiff be awarded the costs of this action; and

11.  That Plaintiff be awarded such further legal and equitable relief as the Court deems proper.

Respectfully submitted,



Dated: August 26, 2016
Falmouth, Maine

(N 603012)
, LLC
45A Underwood Road
Falmouth, Maine 04105
Tel: (207) 747-4135
Email: eadanchuk@gmail.com
*Attorney for Plaintiff*

## JURY DEMAND

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff Blankie Tails, Inc. hereby demands trial by jury on all issues triable by right of jury in this action.